# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-18-00232-CV

Joseph Cotropia, M.D., Appellant

v.

Texas Medical Board and in his Official Capacity Only, Sherif Zaafran,[1] President of the Texas Medical Board, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-15-001195, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

MEMORANDUM OPINION[2]

Joseph Paul Cotropia, M.D., appeals from a judgment affirming the Texas Medical Board's (Board) final order revoking his license to practice medicine for numerous violations of the Medical Practice Act (the Act) related to his association with two pain management clinics. For the reasons that follow, we will affirm the district court's judgment.

---

[1] Dr. Cotropia originally brought suit against Michael Arambula, the former President of the Texas Medical Board. We automatically substitute his successor in office, Sherif Zaafran. *See* Tex. R. App. P. 7.2(a). Dr. Cotropia did not assert a claim against Zaafran individually.

[2] Notice of appeal for this case was originally filed in this Court in March 2016, at which time the case was transferred to the El Paso Court of Appeals in compliance with a docket-equalization order issued by the Texas Supreme Court. On April 12, 2018, the Texas Supreme Court ordered that certain cases be transferred back to this Court from the El Paso Court, and we consider this appeal pursuant to that order. *See* Misc. Docket No. 18-9054 (Tex. Apr. 12, 2018) (per curiam).

**BACKGROUND**

This dispute arises out of Dr. Cotropia's association with two medical clinics in Houston. At both clinics, Dr. Cotropia supervised advanced practice nurses (APN) who saw patients seeking treatment for chronic pain. Dr. Cotropia executed a collaborative agreement with each APN wherein he delegated the performance of certain medical acts, including the prescription of controlled substances. *See* Tex. Occ. Code § 157.001(a) (addressing physician's authority to delegate to a "person acting under the physician's supervision any medical act that a reasonable and prudent physician would find within the scope of sound medical judgment to delegate").

The Board filed a disciplinary complaint alleging that Dr. Cotropia, acting through the APNs, failed to treat nine patients (Patients 1-9) according to the standard of care for the treatment of chronic pain. *See id.* § 157.001(b) ("The delegating physician remains responsible for the medical acts of the person performing the delegated medical acts."). The Board further alleged that Dr. Cotropia allowed one of the clinics, Best Choice, to operate as an uncertified pain management clinic during his time as medical director in 2011. *See id.* § 168.101(a) (providing that pain management clinics must be certified by the Board).

An administrative law judge (ALJ) from the State Office of Administrative Hearings conducted a three-day evidentiary hearing on the Board's complaint. The Board presented the charts of Patients 1-9, who visited the clinics between March and December of 2011. Each patient sought treatment for chronic back, shoulder, or neck pain, and each was prescribed at least one controlled substance. An expert witness presented by the Board, Gregory D. Powell, M.D., testified over

2

Dr. Cotropia's objection that the treatment of these patients fell below the generally accepted standard of care for the treatment of chronic pain.

The ALJ also considered whether Dr. Cotropia allowed Best Choice to operate as an uncertified pain management clinic. The Act defines a pain management clinic as a facility where "a majority of patients are issued on a monthly basis a prescription for opioids, benzodiazepines, barbiturates, or carisoprodol, but not including suboxone." *Id.* § 168.001(1). A clinic that qualifies is exempt from certification if, relevant here, the clinic is "owned or operated by an advanced practice nurse licensed in this state." *Id.* § 168.002(8). The parties agreed that Best Choice met the definition of a pain management clinic but disputed whether the APNs operated it. Dr. Cotropia offered the testimony of Melissa Lockhart, one of the APNs, who testified that the APNs "clinically" operated Best Choice by treating all of the patients. The Board pointed to another portion of Lockhart's testimony where she stated that a separate management company made operational decisions for the clinic.

After the record closed, the ALJ issued a proposal for decision with 123 findings of fact and 25 conclusions of law. With respect to Patients 1-9, the ALJ found that Dr. Cotropia, acting through the APNs, failed to: (1) request medical records of each patient to evaluate previous treatments for pain, (2) document a detailed medical history of the patient's complaint, (3) adequately perform an initial physical examination, (4) develop and document a personalized treatment plan, (5) discuss reasonably foreseeable side effects of the prescribed medications and document those discussions, (6) document and discuss reasonable alternative treatments, (7) safeguard against potential complications by ordering liver tests to check for side effects of the

3

medications, and (8) order urine tests to monitor for abuse or diversion. The ALJ also found that Dr. Cotropia, acting through the APNs, prescribed drugs without evidence of a therapeutic value for the patient. The ALJ further found that Best Choice was not operated by an APN.

Based on these findings, the ALJ concluded that Dr. Cotropia violated numerous provisions of the Act and Board rules and that the Board was authorized to discipline him. The Board adopted the ALJ's findings of fact and conclusions of law without change and issued an order revoking Dr. Cotropia's medical license. Dr. Cotropia timely sought judicial review of the order in the district court. *See id.* § 164.009. Following a hearing on the merits, the district court affirmed the Board's final order. This appeal ensued.

## ANALYSIS

Dr. Cotropia argues in four issues that: (1) the Board improperly held him "strictly liable" for the actions of the APNs, (2) Best Choice was exempt from registration as a matter of law, (3) the ALJ abused her discretion by admitting Dr. Powell's testimony, and (4) the Board's order violated his due process rights.

### Scope of Review

Our review of the Board's final order is governed by the substantial-evidence standard that is codified in section 2001.174 of the Administrative Procedure Act. Tex. Gov't Code § 2001.174. Under this standard, we must reverse or remand an agency decision that prejudiced the appellant's substantial rights "because the administrative findings, inferences, conclusions, or decisions" violated a constitutional or statutory provision, exceeded the agency's statutory authority,

4

are affected by other error of law, or are "not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole." *Id.* § 2001.174(2)(A), (B), (D), (E).

**Strict Liability**

In his first issue, Dr. Cotropia argues that the Board improperly construed section 157.060 of the Act to hold him "strictly liable" for the actions of the APNs. Dr. Cotropia argues that under this section, he is not responsible for the medical acts of the APNs unless he had a reason to believe they were incompetent. We review issues of statutory construction de novo. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).

Section 157.060 of the Act provides:

> Unless the physician has reason to believe the physician assistant or advanced practice registered nurse lacked the competency to perform the act, a physician is not liable for an act of a physician assistant or advanced practice registered nurse solely because the physician signed a standing medical order, a standing delegation order, or another order or protocol, or entered into a prescriptive authority agreement, authorizing the physician assistant or advanced practice registered nurse to administer, provide, prescribe, or order a drug or device.

Tex. Occ. Code § 157.060. According to Dr. Cotropia, he had no reason to know that the treatment of Patients 1-9 was substandard because he reviewed the chart of only one of them and did not discover an issue. In effect, Dr. Cotropia asserts that under section 157.060, he is not liable for the treatment of patients whose charts he did not review.

5

However, the general rule under the Act provides that "[t]he delegating physician remains responsible for the medical acts of the person performing the delegated medical acts." *Id.* § 157.001(b). This Court addressed a similar argument recently and explained that:

> [S]ection 157.060 does not mean that a physician may *never* be responsible for delegated medical acts unless he has reason to believe that the APN lacked the competency to perform the act. Instead, the provision means that a physician will not be held responsible for delegated medical acts in the absence of such knowledge solely because of the supervisory relation he has with the APN . . . . In other words, section 157.060's more specific provision does not eliminate the general rule of section 157.001(b), it only limits it in certain circumstances.

*Davis v. Texas Med. Bd.*, No. 03-17-00562-CV, 2018 WL 1802509, at *4 (Tex. App.—Austin Apr. 17, 2018, no pet.) (mem. op.). Under *Davis*, the general rule remains that physicians are liable for delegated medical acts. *See id.* Dr. Cotropia argues that he can only gain a reason to know that the APNs lacked competency by reviewing patient charts, but section 157.060 is not so specific. *See* Tex. Occ. Code § 157.060. The Board further concluded that Dr. Cotropia did not "use proper diligence in his professional practice" or "maintain adequate medical records," and failed to "adequately supervise [the APNs] to ensure that the treatment of Patients 1 through 9 met the standard of care." *See id.* § 164.053(a)(8) (providing that physician who "fails to supervise adequately the activities of those acting under the supervision of the physician" commits unprofessional conduct); 22 Tex. Admin. Code §§ 190.8(1)(C) (Tex. Med. Bd., Disciplinary Guidelines); 165.1 (Tex. Med. Bd., Medical Records). The Board's decision to discipline

6

Dr. Cotropia therefore does not rest solely on his supervisory relationship with APNs. *See Davis*, 2018 WL 1802509, at *4. We overrule Dr. Cotropia's first issue.

**Pain Clinic Certification**

In his second issue, Dr. Cotropia challenges the Board's finding that Best Choice was not "operated" by an APN. Dr. Cotropia couches this argument as a dispute over the meaning of the term but he is, in effect, asserting that substantial evidence does not support the ALJ's finding that the APNs did not operate the clinic.

Substantial evidence review is essentially "a rational-basis test to determine, as a matter of law, whether an agency's order finds reasonable support in the record." *Jenkins v. Crosby Indep. Sch. Dist.*, 537 S.W.3d 142, 149 (Tex. App.—Austin 2017, no pet.). Meeting the substantial-evidence standard does not require "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion of fact." *CPS Energy v. Public Util. Comm'n of Tex.*, 537 S.W.3d 157, 169 (Tex. App.—Austin 2017, pet. filed). We must presume that the Board's order is supported by substantial evidence, and Dr. Cotropia bears the heavy burden to demonstrate otherwise. *Id.*

Section 168.002 exempts from the Act's certification requirements a pain management clinic that is "owned or operated by an advanced practice nurse licensed in this state" and whose practice meets certain other requirements. Tex. Occ. Code § 168.002(8); *see* 22 Tex. Admin. Code § 195.4(b)(8) (Tex. Med. Bd., Operation of Pain Management Clinics). It is undisputed that an APN did not own Best Choice, but Dr. Cotropia emphasizes that Ms. Lockhart, who worked at the clinic, testified that it was clinically operated by the APNs. The Board argues in

7

response that the term "operate" includes both clinical and administrative actions. *See* 22 Tex. Admin. Code § 195.4(b)(8). The Board points to the fact that Dr. Cotropia himself operated the practice as medical director and to Ms. Lockhart's testimony that a separate management company handled many operational tasks. On cross-examination by the Board's counsel, Ms. Lockhart agreed that the management company decided the clinic's hours, handled the payroll, maintained the patients's medical records, and paid utilities and other routine bills. We conclude that substantial evidence supports the Board's finding that Best Choice was not owned or operated by an APN and overrule Dr. Cotropia's second issue.

**Admission of Dr. Powell's Testimony**

In his third issue, Dr. Cotropia argues the ALJ abused her discretion by overruling his objection to Dr. Powell's testimony. Dr. Cotropia argues that Dr. Powell's opinion on the requirements of the standard of care was "conclusory on its face" and "unreliable."

We review an ALJ's ruling on the admission of evidence, including expert testimony, under the same abuse-of-discretion standard we apply to trial courts. *Scally v. Texas State Bd. of Med. Exam'rs*, 351 S.W.3d 434, 450 (Tex. App.—Austin 2011, pet. denied). An abuse of discretion occurs when a court acts without reference to guiding rules or principles. *Bennett v. Grant*, 525 S.W.3d 642, 654 (Tex. 2017). "An ALJ, like a trial court, has broad discretion when deciding whether to admit expert testimony in a contested-case hearing." *Scally*, 351 S.W.3d at 450.

Qualified experts may offer opinion testimony that is "both relevant and based on a reliable foundation." *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 348 (Tex. 2015). Expert testimony that is conclusory is not relevant because it is not "sufficiently tied to the facts of

8

the case [so] that it will aid the jury in resolving a factual dispute." *Id.* (quoting *E.I. du Pont de Nemours & Co., Inc. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995)). Dr. Powell testified that he formulated his opinion on what the standard of care requires based on his education, twenty years of experience in treating patients with chronic pain, and his periodic review of guidelines put out by relevant professional organizations such as the Texas Pain Society. In addition, Dr. Powell testified that Board Rule 170.3 provides a "good summary" of the standard. *See* 22 Tex. Admin. Code § 170.3 (2010) (Tex. Med. Bd., Guidelines), *amended by* 40 Tex. Reg. 4898 (2015) *and* 41 Tex. Reg. 4824 (2016). Dr. Powell's expert report—which the ALJ admitted at the hearing—states in relevant part:

> The treatment of chronic pain such as this is regulated by Texas Medical Board Rule 170.3. This rule, as well as the standard of care, requires a comprehensive and appropriate history and physical examination and documentation of medical decision making, an appropriate treatment plan, and measures of both compliance and appropriate medication use.
>
> . . . . The patients often present for what is termed "therapy" which is often cold laser treatment, hot or cold packs, massage, or pain relief lotion applications. No further documentation is provided for a medical visit (ie. no relevant history or physical examination) and they receive the treatment and leave with a prescription for controlled substances. In no case did I find any significant justification for these prescriptions and indeed, their prescription was never documented in the medical record other than a copy of the signed prescription.
>
> Specifically with regard to the prescription of controlled substances, there is no attempt to document the need for the medication or to monitor patient progress. There is no documentation of a treatment plan. There are no measures of compliance such as urine drug screens or risks of medication misuse such as the SOAP-R or COMM. Indeed a sworn statement from a mid-level provider indicated that urine drug screens were not performed as the

9

equipment was on backorder. All are strongly encouraged by Board Rule 107.3 and have become the standard of care throughout the State of Texas. Furthermore, they were the standard of care at the time when these services were rendered. I can find no evidence of any standard pain contract with these patients, nor any written understanding of the risks, benefits, and alternative treatments available.

Dr. Powell further described the standard of care for the treatment of chronic pain and detailed his conclusions about Patients 1-9 in his testimony, thereby tying his expert opinions to the specific facts of this case.

Dr. Cotropia also challenges the reliability of Dr. Powell's testimony. Courts generally assess reliability by applying the six *Robinson* factors to the methodology the expert employed to arrive at his opinion. *Gharda USA*, 464 S.W.3d at 348. Those factors are:

(1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique[.]

*Robinson*, 923 S.W.2d at 557. Applying these factors, Dr. Cotropia argues that Dr. Powell's testimony is necessarily unreliable because the method by which he formulated his opinion on the standard of care cannot be tested, has not been subjected to peer review, and is not generally accepted in the scientific community.

However, the *Robinson* factors are nonexclusive and "do not fit every scenario." *TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 235 (Tex. 2010). Expert testimony is also unreliable "if

10

there is too great an analytical gap between the data on which the expert relies and the opinion offered.'" *Gharda USA*, 464 S.W.3d at 349 (quoting *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 904 (Tex. 2004)). To determine whether an analytical gap exists, we compare the facts that the expert relied on, the facts in the record, and his ultimate opinion. *Id.* This Court recently employed this approach to evaluate expert testimony on the same subject. *See Swate v. Texas Med. Bd.*, No. 03-15-00815-CV, 2017 WL 3902621, at *3 (Tex. App.—Austin Aug. 31, 2017, pet. denied) (mem. op.). Dr. Cotropia further insists that Dr. Powell's testimony is unreliable because there is no single statute or rule setting out the standard of care. Dr. Cotropia directs us to no support for this broad assertion, and we decline to adopt it. *See Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 725-26 (Tex. 1998) (court must determine whether expert's opinion has "a reliable basis in the knowledge and experience of [the] discipline" (quoting *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997))). After a thorough review of the facts relied upon by Dr. Powell, the facts in the record, and his ultimate opinion, we conclude the ALJ did not abuse her discretion in admitting his testimony. *See Swate*, 2017 WL 3902621, at *3-5.

**Due Process**

Dr. Cotropia argues in his final issue that the Board violated his due process rights by failing to adequately disclose before the hearing the allegations against him or the standard of care that he allegedly breached.

Claims regarding the deprivation of constitutional rights present questions of law that we review de novo. *Scally*, 351 S.W.3d at 446. This Court has previously held that the Board must afford the holder of a professional license due process before revoking it. *See Swate*,

11

2017 WL 3902621, at *6. "Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004).

Dr. Cotropia specifically argues that the Board's failure to respond to two of his interrogatories forced him to "guess about the particular allegations against him." In Interrogatory No. 19, Dr. Cotropia asked the Board to disclose "the Texas Law, Rule, Texas Medical Board Order or Texas Occupational Statute that governs the supervision standards of care required of a Texas physician[] that is collaborating or supervising a Texas [APN] who is given prescriptive authority by the Texas Physician." The Board objected to the use of the term "standard of care" as it relates to supervision of APNs and referred Dr. Cotropia to the complaint, which listed the "provisions of the Medical Practice Act and/or Texas Medical Board Rules related to the supervision of [APNs]." Dr. Cotropia argues that this required him to improperly sift through pleadings, but the Board's First Amended Complaint—filed almost four months before the hearing—set out specific provisions of the Act and Board rules in question and outlined the factual allegations supporting each alleged violation. Dr. Cotropia was not forced to guess at the allegations against him.

In Interrogatory No. 5, Dr. Cotropia asked the Board to disclose the applicable standard of care "required of a Texas physician supervising a Texas [APN]." The Board objected to the use of the term "standard of care" as it relates to supervision of APNs and on the basis that expert opinions are discoverable by requests for disclosure or depositions, which objections were sustained by the ALJ. *See* Tex. R. Civ. P. 195.1. It is undisputed that Dr. Cotropia did not file a

request for disclosure concerning Dr. Powell's testimony or seek to take his deposition, and the record indicates he received Dr. Powell's report approximately six months before the final hearing.

Dr. Cotropia's arguments below and in his briefing to us often obfuscate the standard of care applicable to a physician's practice of medicine with the physician's supervision of APNs and/or responsibility for delegated acts. A physician has a duty to treat patients in the manner that an ordinary, prudent physician would in the same or similar circumstances. *See, e.g.*, *Chambers v. Conaway*, 883 S.W.2d 156, 158 (Tex. 1993) (addressing physician's standard of care in medical-malpractice context); *see also* 22 Tex. Admin. Code § 190.8(1)(A) (providing that failure to treat patients according to standard of care is grounds for discipline). More specific to this case, Board Rule 170.3 provides that a "physician's treatment of a patient's pain will be evaluated by considering whether it meets the generally accepted standard of care and whether the following minimum requirements have been met." 22 Tex. Admin. Code § 170.3 (2010). By contrast, the parameters of a physician's duty to supervise APNs and others performing delegated medical acts depends on the type of the act. *See, e.g.*, Tex. Occ. Code §§ 157.0511-.0514 (addressing agreements allowing prescription of medication), .058 (addressing delegation agreements with nurse anesthetists), .101 (addressing delegation agreements with pharmacists). In this context and set against this statutory framework, the factual allegations in the Board's petition and the opportunity to depose Dr. Powell prior to the hearing provided Dr. Cotropia with ample notice of the standard of care.

We conclude that Dr. Cotropia was not deprived of due process and overrule his fourth issue. *See Swate*, 2017 WL 3902621, at *6 (rejecting similar due process challenge).

13

## CONCLUSION

Having overruled Dr. Cotropia's appellate issues, we affirm the district court's judgment.

_____
Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed

Filed:   August 28, 2018